IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| SAM GONZALES, MARIA CROSBY And MARIANA CORREA, Plaintiffs, v. CITY OF AURORA and the AURORA CITY COUNCIL, Defendants. | No. 02 C 8346 Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiffs sued defendants for their alleged violations of the Fourteenth Amendment and Section 2 of the Voting Rights Act, 42 U.S.C. § 1973. The Court granted defendant's motion for summary judgment, an order plaintiffs now ask the Court to reconsider. For the reasons set forth below, the motion is denied.[1]

### Discussion

Under Federal Rule of Civil Procedure ("Rule") 59(e), plaintiffs are entitled to reconsideration if "the Court has patently misunderstood a party, . . . has made a decision outside the adversarial issues presented to [it] . . . or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Plaintiffs contend that reconsideration is appropriate because the Court's ruling rested, in

---

[1] The facts are set forth in the Court's previous decision, *Gonzales v. City of Aurora*, No. 02 C 8364, 2006 WL 681048 (N.D. Ill. Mar. 13, 2006), and will not be repeated here.

part, on an erroneous factual finding – that plaintiffs admitted Ward 7 is an effective Latino district. (Pls.' Recons. Mem. at 1.) Rather than admitting that fact, plaintiffs say they specifically asserted that Ward 7 was *not* effective for Latinos.

Plaintiffs did indeed make that assertion in their statement of additional material facts. (*See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 9 ("Kimball Brace testified that he did not consider District 7 to be an effective ward for Latinos . . . .").)[2] Defendants, however, objected to that assertion on the grounds that Brace had not performed the detailed analysis necessary to render that opinion. (*See* Defs.' Resp. Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 9.)

That objection was well-taken. As plaintiffs pointed out in their brief opposing summary judgment, the effectiveness of a voting district can be measured in two ways, by: (1) using the 65 percent rule-of-thumb, *i.e.*, deeming a district effective for Latinos if 65 percent of its total population is Latino; or (2) performing a "detailed, district-by-district [analysis] using a variety of difficult to quantify measures such as political attitudes and behaviors of the residents of a given district, the nature of the races, the characteristics of the candidates, and specific campaign issues." (Pls.' Opp'n Mem. at 6-7.) Plaintiffs argued that the latter method could not be used in this case because neither their expert, Jorge Chapa, nor defense expert Brace had "perform[ed] th[e] . . . extensive analysis" required to do so. (*Id.* at 7.) Thus, plaintiffs admitted that Brace had no basis, other than the rule-of-thumb, for opining on the effectiveness of Ward 7.

Moreover, even if there were a foundation for it, that portion of Brace's testimony would still not provide a basis for reconsideration. At plaintiffs' urging, the Court accepted the 65 percent rule-

---

[2] Plaintiffs' embrace of this bit of Brace's testimony stands in stark contrast to their view of the rest of his work. (*See* Pls.' LR 56.1(b)(3)(A) Stmt. ¶ 104 (stating that Brace's and his statements were "self-serving" and denying that the conclusions and opinions set forth in his reports and in his testimony "were all reached and are held to a reasonable degree of demographic and statistical certainty").) Apparently, Brace is unreliable and self-serving unless he favors plaintiffs.

2

of-thumb used by their expert as the appropriate measure of effectiveness. As plaintiffs have admitted, Latinos constitute 66.27 percent of Ward 7's population. (*See* Pls.' LR 56.1(b)(3)(A) Stmt. ¶ 18.) As a result, the Court found that Ward 7 is effective for Latinos. Having championed the rule that compelled that conclusion, plaintiffs cannot now complain that the conclusion was wrong.

Plaintiffs also challenge the Court's conclusion that they did not satisfy Senate factor two, which requires a showing that voting in Aurora is highly polarized. In their view, that conclusion cannot be squared with the Court's finding that plaintiffs satisfied *Gingles* factor three, which also requires evidence that voting is racially polarized. Again, the Court disagrees. Senate factor two and *Gingles* factor three both require evidence of polarized voting, but the degree of polarization necessary to satisfy them is different. The *Gingles* factor is satisfied as long as there is evidence that polarized voting exists. The Senate factor, however, is satisfied only if the evidence shows that the polarization rate is high. *See Thornburgh v. Gingles*, 478 U.S. 30, 44-45 (1986) (stating that Senate factor two concerns "*the extent* to which voting . . . is racially polarized" (emphasis added)); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 986 F.2d 728, 749 (5th Cir. 1993) ("Under the totality of circumstances inquiry, the focus is on the degree of racially polarized voting."). Plaintiffs' expert said that there was an overall polarization rate of 54 percent in Aurora elections over the period 1991-2002. (*See* 9/04 Ruhil Report at 8.) Relying on *League of United Latin American Citizens* and *United States v. Charleston County*, 365 F.3d 341, 350 (4th Cir. 2004), the Court concluded that a 54 percent polarization rate was not high enough to satisfy Senate factor two.

Plaintiffs do not contend that *League of United Latin American Citizens* and *Charleston County* are no longer valid or offer any other reason to suggest that the Court's reliance on them was

3

improper. Nor do they say that the Court misstated Ruhil's data or conclusions. They simply argue that the Court's conclusion was wrong, a basis for appeal, perhaps, but not for reconsideration.

Plaintiffs also take issue with the Court's finding that they did not satisfy the seventh Senate factor, which requires evidence that Latinos have enjoyed little electoral success in Aurora. Plaintiffs say the Court's conclusion was wrong because it depended in part on the fact that: (1) a Latina was appointed alderman, which is irrelevant to measuring electoral success; and (2) a Latina was elected to represent the 83rd congressional district, an office that is irrelevant to this dispute over local elections. Further, plaintiffs say, even if those facts had some relevance, the Court's consideration of them would still be erroneous because they were not contained in the record.

Plaintiffs' last argument is easily dispatched. The election or appointment of a government official is a fact subject to judicial notice. *See* Fed. R. Evid. 201(b) (permitting court to take judicial notice of a fact that "is not subject to reasonable dispute" and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Schaffer v. Clinton*, 240 F.3d 878, 885 n.8 (10th Cir. 2001) (taking judicial notice of the fact that Congressman received a larger percentage of the vote each time he ran for reelection); *Solomon v. Liberty County*, 957 F. Supp. 1522, 1556 (N.D. Fla. 1997) (taking judicial notice of the official's two re-elections to County Commission). Thus, though they were not in the record, there was nothing improper about the Court's consideration of those facts.

Nor was it improper for the Court to consider the results of a congressional race in the analysis. Though the results of exogenous elections, *i.e.*, those involving voting districts other than the one that is challenged, should not be the focus of the electoral success analysis, the data from such elections may still be considered. *See, e.g., Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1021 (8th Cir. 2006) ("Although they are not as probative as endogenous elections, exogenous elections hold

4

some probative value."); *N.A.A.C.P. v. Fordice*, 252 F.3d 361, 370 (5th Cir. 2001) ("[T]he exogenous character of elections does not render them nonprobative." (internal quotation and alterations omitted)); *Johnson v. Hamrick*, 196 F.3d 1216, 1222 (11th Cir. 1999) (stating that district court "examined some exogenous elections" but properly focused on endogenous elections). As these cases instruct, the Court viewed the results of the 83rd Congressional District election as a factor in, but not the focus of, the electoral success analysis. As a result, the Court's use of that data is not a basis for reconsideration.

Lastly, plaintiffs say the Court should not have considered the fact that a Latina had been appointed to the City Council in evaluating electoral success.[3] Certainly, an appointment does not demonstrate electoral success. But because Latino voters in Aurora favor Latino candidates (*see* Ruhil Report at 5-9), and incumbents generally enjoy a significant electoral advantage, *see Clarke v. City of Cincinnati*, 40 F.3d 807, 813 (6th Cir. 1994) (noting that "incumbency plays a significant role in the vast majority of American elections"), the appointment of a Latino alderman enhances Latinos' opportunity for electoral success. That enhanced opportunity is not dispositive of the electoral success issue, nor was it treated as such by the Court. (*See* 3/13/96 Mem. Op. & Order at 12 (acknowledging that Latinos have not been elected in direct proportion to their citizen voting age population).) But it tends to refute the notion that Latinos do not have equal electoral opportunity, despite their proportional representation on the Ward Map. The Court's consideration of that appointment does not, therefore, invalidate its analysis.

---

[3] The Court stated that the appointed Latina alderman was currently in office and thus, Aurora presently has two aldermen of Latino descent. That statement is incorrect. There is currently only one Latina alderman. *See* http://www.aurora-il.org/aldermen/serviceguide.asp#citycouncil.

5

## Conclusion

For the reasons set forth above, plaintiffs' motion to reconsider [doc. no. 108] is denied and this case is terminated.

SO ORDERED.  ENTERED: 11/03/06

HON. RONALD A. GUZMAN
United States District Judge